UNITED STATES v. PENNSYLVANIA R. CO.

(District Court, E. D. Pennsylvania. June 5, 1908.)

No. 8.

On Motions for New Trial and by Defendant for Judgment Notwithstanding the Verdict.

J. Whitaker Thompson, John C. Swartley, and Luther M. Walter, for the United States.

John Hampton Barnes, for defendant.

J. B. McPHERSON, District Judge. Since this case was tried, and since the motions under consideration were argued, the Supreme Court of the United States has decided the case of St. Louis, etc., Railway Co. v. Taylor, 28 Sup. Ct. 616, 52 L. Ed. ——, which, as I understand the matter, decides finally the vital questions now before this court. It is true that the Taylor Case was an action against the railway company to recover damages for the death of an employé, while the present suit was brought by the United States to recover a penalty for failure on the part of the defendant to keep certain safety appliances in good order; but the same section of the safety appliance act was construed by the Supreme Court as is now in question, and the construction there put upon it supports the instructions that were given to the jury, and are now complained of, as, I think, the following quotation from Mr. Justice Moody's opinion will make clear. He said, inter alia:

"The plaintiff in error raises another question, which, for the reasons already given, we think is of a federal nature. The evidence showed that drawbars which, as originally constructed, are of standard height, are lowered by the natural effect of proper use; that, in addition to the correction of this tendency by general repair, devices called shims, which are metallic wedges of different thickness, are employed to raise the lowered drawbar to the legal standard; and that in the caboose of this train the railroad furnished a sufficient supply of these shims, which it was the duty of the conductor or brakeman to use as occasion demanded. On this state of the evidence, the defendant was refused instructions, in substance, that if the defendant furnished cars which were constructed with drawbars of a standard height, and furnished shims to competent inspectors and trainmen, and used reasonable care to keep the drawbars at a reasonable height, it had complied with its statutory duty, and, if the lowering of the drawbar resulted from the failure to use the shims, that was the negligence of a fellow servant, for which the defendant was not responsible. In deciding the questions thus raised, upon which the courts have differed (St. Louis & S. F. R. Co. v. Delk [C. C. A.] 158 Fed. 931), we need not enter into the wilderness of cases upon the common-law duty of the employer to use reasonable care to furnish his employé reasonably safe tools, machinery, and appliances, or consider when and how far that duty may be performed by delegating it to suitable persons for whose default the employer is not responsible. In the case before us the

liability of the defendant does not grow out of the common-law duty of master and servant. The Congress, not satisfied with the common-law duty and its resulting liability, has prescribed and defined the duty by statute. We have nothing to do but to ascertain and declare the meaning of a few simple words in which the duty is described. It is enacted that 'no cars, either loaded or unloaded, shall be used in interstate traffic which do not comply with the standard.' There is no escape from the meaning of these words. Explanation cannot clarify them, and ought not to be employed to confuse them or lessen their significance. The obvious purpose of the Legislature was to supplant the qualified duty of the common law with an absolute duty deemed by it more just. If the railroad does, in point of fact, use cars which do not comply with the standard, it violates the plain prohibitions of the law, and there arises from that violation the liability to make compensation to one who is injured by it. It is urged that this is a harsh construction. To this we reply that, if it be the true construction, its harshness is no concern of the courts. They have no responsibility for the justice or wisdom of legislation, and no duty except to enforce the law as it is written, unless it is clearly beyond the constitutional power of the lawmaking body. It is said that the liability under the statute, as thus construed, imposes so great a hardship upon the railroads that it ought not to be supposed that Congress intended it. Certainly the statute ought not to be given an absurd or utterly unreasonable interpretation leading to hardship and injustice, if any other interpretation is reasonably possible; but this argument is a dangerous one, and never should be heeded where the hardship would be occasional and exceptional. It would be better, it was once said by Lord Eldon, to look hardship in the face, rather than break down the rules of law. But when applied to the case at bar the argument of hardship is plausible only when the attention is directed to the material interest of the employer to the exclusion of the interests of the employé and of the public. Where an injury happens through the absence of a safe drawbar, there must be hardship. Such an injury must be irreparable misfortune to some one. If it must be borne entirely by him who suffers it, that is a hardship to him. If its burden is transferred, as far as it is capable of transfer, to the employer. it is a hardship to him. It is quite conceivable that Congress, contemplating the inevitable hardship of such injuries, and hoping to diminish the economic loss to the community resulting from them, should deem it wise to impose their burdens upon those who could measurably control their causes, instead of upon those who are in the main helpless in that regard. Such a policy would be intelligible, and, to say the least, not so unreasonable as to require us to doubt that it was intended, and to seek some unnatural interpretation of common words."

Upon this point the charge to the jury in the present case was as follows:

"Let me say also that there is no question in the case for your consideration concerning the measure of care or diligence that the defendant may have exercised with regard to inspection. In my construction of the statute, that is not a matter which the act of Congress makes necessary for consideration. As I understand the law, Congress has required a common carrier engaged in interstate commerce to see that these devices are in order under conditions such as are here before us. I am not speaking now of accidents that might happen to them while they were in the course of transportation, when it would be impossible for anybody to know that they were out of order or to repair them, but I am speaking of a condition that may exist while the cars are at rest, and when an opportunity is afforded for the process of inspection. That was the case here, according to the undisputed evidence. This car and the train of which it was part lay at the Mantua yards for some hours. I do not know for how long exactly. The precise time is not important; but an opportunity was afforded, at all events, for inspection. That being so, in my construction of the statute, the duty rested upon the carrier to find any defect that existed, and if the defect was there, and the carrier failed to find it, it would be liable to the penalty, even although it

made an inspection and made it by careful men, who performed their duty according to the best of their ability. The fact that they failed to find it would, while perhaps not a fault in one sense, nevertheless expose the carrier to the penalty. So that the whole case depends upon what you find the question of fact to be. Was this car out of operative condition at the time testified to by the witness? I repeat, the burden of proof is on the government to show you by clear and satisfactory evidence that it was out of order at one or both ends, and if the government has not so satisfied you, then your verdict must be for the defendant. If, however, it has satisfied you that this was out of order, that one or both ends of this coupling device were out of order, then your verdict should be in favor of the United States for the sum of $100."

Upon the authority of the Taylor Case, therefore, the motions for a new trial and for judgment notwithstanding the verdict are refused, and to the refusal of the defendant's motion for judgment an exception is sealed.